# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:24-CR-0050-S |
| | § | |
| COY MONTRELL FORD (1) | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Coy Montrell Ford's Motion to Suppress ("Motion") [ECF No. 20]. Having reviewed the Motion, the Government's Response to Defendant's Motion to Suppress Evidence ("Response") [ECF No. 25], Defendant's Reply to Government's Response to Motion to Suppress [ECF No. 26], appended body camera and interview footage [ECF Nos. 20-1, 20-3, 20-4, 25-5, 25-6], and the applicable law, the Court **DENIES** the Motion as to the firearm seized from Defendant's hotel room on January 27, 2024.

### I. BACKGROUND

On January 25, 2024, following a verbal altercation, Defendant allegedly assaulted his pregnant girlfriend in Houston, Texas. Mot., Ex. 6 [ECF No. 20-6] at 3; Resp. 1-2. According to the police report, Houston Police Department ("HPD") officers arrived at the scene at 11:55 a.m. Mot., Ex. 6 at 8. Upon arrival, HPD officers were "flagged down" by Defendant's girlfriend. *Id.* She informed HPD officers that Defendant had active warrants for his arrest and carried a firearm with a "Glock switch."[1] *Id.*; Resp. 2. Later that evening, she told HPD that Defendant was continuing to threaten her life and that as a result, she was traveling to the Dallas area. Mot., Ex. 6 at 10; Resp. 2.

---

[1] A "Glock switch" is a device that converts a semiautomatic firearm into a fully automatic machinegun. *See* Mot. 1-2; Resp. 2 & n.2.

Thereafter, on January 27, 2024, HPD notified Detective John Hock and the Irving Police Department ("IPD") that Defendant had "possibly followed his girlfriend to Irving, Texas." Mot., Ex. 5 [ECF No. 20-5] at 4; Mot. 1. IPD was also informed that Defendant had two outstanding warrants for his arrest—a felony warrant and a misdemeanor warrant. Mot., Ex. 5 [ECF No. 20-5] at 4; Resp. 2 & n.3. IPD officers located Defendant at the HomeTowne Studios hotel in Irving. Mot. 2; Resp. 3. Because it was unclear how Defendant initially obtained access to the hotel, IPD "officers reasoned that [Defendant] may have accessed the room through another individual" or "may be visiting another person at the hotel." Resp. 3. An IPD officer spoke with a hotel desk clerk, who reported that Defendant checked into the hotel around noon using his name and paid for Room 248. Resp., Ex. 2 [ECF No. 25-2] at 4. IPD officers conducted surveillance of the room for approximately two to three hours. Mot. 2; Resp. 4; Resp., Ex. 10 [ECF No. 25-10] at 16:1-3. IPD officers "did not see anyone enter or exit the room." Resp. 4. At IPD officers' request, the clerk called Room 248 at approximately 3:00 p.m. Resp., Ex. 2 at 4; Resp. 4. Defendant answered the clerk's call, confirming he was inside the room. *Id.*

IPD officers approached Room 248 shortly thereafter. Mot. 3. Prior to knocking, officers placed an explosive device on the door of the room. Mot., Ex. 1 [ECF No. 20-1] at 00:55-01:10. An IPD officer then knocked, identified himself as IPD, and instructed Defendant to come out. *Id.* at 01:13-23. Less than three seconds later, the officer told Defendant to "come to the door with [his] hands up." *Id.* at 01:26-32. After commanding Defendant to get away from the door, the officer detonated the explosive device. *Id.* at 01:39-47. Another officer then used a ram on the damaged door. *Id.* at 1:51-56.

Once the door was opened, officers surrounded the hotel room doorway with their weapons pointed toward the inside of the hotel room. *Id.* at 01:56-59. Officers directed Defendant to put his

"hands up." *Id.* at 01:55-2:00. Another officer told Defendant to "drop the phone or [he would be] tazed." *Id.* at 02:00-05. The officer then instructed Defendant to "turn around," "face away from [the officer]," and "stand up." *Id.* at 02:05-07. One of the officers warned Defendant that "if [he] reach[ed] for something again," he would get hurt. *Id.* at 02:09-12. Defendant was ordered to "interlace [his] fingers on the top of [his] head." *Id.* at 02:12-16. The same officer then instructed Defendant to "back up" and Defendant complied. *Id.* at 02:17-25. The officers took Defendant out of the hotel room and positioned him against the exterior wall, where he was handcuffed and searched. *Id.* at 02:21-05:19.

As one officer was searching Defendant, other officers called for anyone inside Room 248 to come out with their hands on their head. *Id.* at 02:58-03:03. No one responded. *Id.* at 03:03-34. Next, three officers entered the hotel room. *Id.* at 03:32-34. The first officer entered with his weapon and shield raised, walked toward the back of the room, and looked left. Mot., Ex. 3 [ECF No. 20-3] at 02:45-51. The officer then quickly turned right to walk in and out of the bathroom. *Id.* at 2:51-03:02. The second officer followed with his weapon raised and turned left to examine the area by the refrigerator and kitchen cabinets once he reached the back of the room. *Id.* at 02:45-03:00. According to the Government, "[t]h[e] second officer observed a firearm—equipped with a Glock switch—in plain view on the floor between the wall and the refrigerator." Resp. 5; *see also* Resp., Ex. 5 [ECF No. 25-5] at 04:02-19; Resp., Ex. 7 [ECF No. 25-7]; Resp., Ex. 8 [ECF No. 25-8]. The third officer walked into the room, turned over one of the two phones sitting on bed, went to the back of the room near the second officer, and turned to leave. Mot., Ex. 3 at 02:45-03:04. As the first two officers were exiting the room, the first officer lifted the bed for the second officer to inspect the space underneath. *Id.* at 3:31-36.

3

According to the Government, IPD officers seized the firearm, two phones, and a drum magazine from inside the hotel room.[2] Resp. 6. Defendant moves to suppress all evidence seized pursuant to IPD's warrantless search of his hotel room on January 27, 2024, immediately following his arrest.[3] Mot. 16.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution of the United States protects an individual's right "against unreasonable searches and seizures." U.S. CONST. amend. IV. "This Fourth Amendment protection extends to guests in hotel rooms." *United States v. Timoteo*, 353 F. App'x 968, 971 (5th Cir. 2009) (citing *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993), *abrogated on other grounds by United States v. Aguirre*, 664 F.3d 606 (5th Cir. 2011)). "[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of [an] illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citation omitted). To assert a Fourth Amendment challenge, a defendant must have a legitimate expectation of privacy in the particular area searched. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). "[T]he Fourth Amendment standing inquiry is both defendant- and place-specific: it requires that a *particular* defendant (the suppression movant) have a property or privacy interest in a *particular* place (the area searched)." *United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020) (citation omitted).

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth

---

[2] A drum magazine is "a receptacle that holds and feeds cartridges to a submachine gun or light machine gun." Drum Magazine, DICTIONARY.COM, https://www.dictionary.com/browse/drum-magazine.

[3] The Motion does not challenge law enforcement's seizure of an extended magazine found in Defendant's pocket upon arrest. *See* Resp. 6.

4

Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). However, in cases where a search is not conducted pursuant to a warrant, the Government bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999)).

"Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)). One exception is when officers perform a post-arrest sweep. *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008). The Fifth Circuit has articulated three "variations" of the post-arrest exception:

> First, incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon. Second, officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur. Probable cause or reasonable suspicion is not necessary for these first two variations. Third, officers may also perform cursory "protective sweeps" of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched.

*Id.* (citations omitted).

The Fifth Circuit has laid out several requirements regarding the third variation. For the protective sweep of a larger area to be constitutionally valid, (1) officers must not have entered, or remained in, the location illegally, and their presence within it must be for a legitimate law enforcement purpose; (2) the protective sweep must be supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the protective sweep must be no more than a cursory inspection of those spaces where a person may be found; and (4) the protective sweep may last no longer than is necessary to dispel the

reasonable suspicion of danger, and no longer than the police are justified in remaining on the premises. *United States v. Rodriguez*, 601 F.3d 402, 405-06 (5th Cir. 2010) (citation omitted). When determining whether officers had a reasonable, articulable suspicion sufficient to justify a protective sweep, courts consider the "totality of the circumstances surrounding the officers' actions." *Id.* at 406 (quoting *United States v. Maldonado*, 472 F.3d 388, 395 (5th Cir. 2006)). "If reasonable minds could differ on the whether the sweep was warranted, [courts] do not second-guess the judgment of experienced law enforcement officers concerning the risks in a particular situation." *United States v. Silva*, 865 F.3d 238, 242 (5th Cir. 2017) (citing *United States v. Menchaca-Castruita*, 587 F.3d 283, 290 (5th Cir. 2009)).

"The seizure of obviously incriminating evidence found during a protective sweep is constitutionally permissible pursuant to the plain view doctrine." *Waldrop*, 404 F.3d at 369 (citation omitted). Under the plain view doctrine, law enforcement can seize items where: "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent;' and (4) the police had a lawful right of access to the item." *Rodriguez*, 601 F.3d at 407 (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

### III. ANALYSIS

Defendant contends that IPD officers unlawfully searched his hotel room in violation of the Fourth Amendment. Mot. 5-6. The Government responds that Defendant does not have standing to challenge the search and that, regardless, the search and seizure were constitutional. Resp. 1. Although the Court concludes that Defendant has standing to challenge IPD's warrantless search of Room 248, the Court finds that IPD officers lawfully entered the room to conduct a

6

sweep of the space and that as a result, the seizure of a firearm discovered in plain view met a lawful exception to the Fourth Amendment.[4]

### A. Standing

The Government argues that IPD's warrantless search of Room 248 did not violate Defendant's privacy because he was not a legitimate guest of the hotel and therefore lacks standing to challenge the search. Resp. 6-7. While Defendant admitted to initially sneaking into the room to sleep, Resp., Ex. 2 at 5; Resp., Ex. 6 [ECF No. 25-6] at 12:18-14:05, the Government's own evidence consistently shows that Defendant later registered at the front desk and paid for the room. Resp., Ex. 2 at 4 ("Officer Towns spoke with the front desk clerk . . . who told him that [Defendant] had just paid for the room (248) approximately one hour prior and that [Defendant] provided his first and last name . . . to her during check-in and payment."); *id.* at 5 (reporting that Defendant said "he ended up paying for the room in his name around lunch time"); Resp., Ex. 6 at 13:06-46 (during his post-arrest interview Defendant recounts paying for the hotel room); Resp., Ex. 10 at 15:21-25 ("[The front desk clerk] confirmed that it was [Defendant] that checked in into the room, paid for the room, used his ID."). Accordingly, the Court finds that Defendant was a legitimate guest of the hotel and that he had a personal privacy interest in Room 248. *See Timoteo*, 353 F. App'x at 971 (citation omitted); *Beaudion*, 979 F.3d at 1097 (citation omitted). Thus, Defendant has standing to challenge the officers' warrantless search of the room.

---

[4] Defendant asks the Court to either grant the Motion or set a hearing on it. Mot. 16. "Evidentiary hearings [on a motion to suppress] are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983) (citation omitted). "General or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice." *Id.* (citation omitted). Because Defendant does not allege any facts that, if proven, would justify relief with respect to the firearm, the Court did not set an evidentiary hearing.

### B. IPD's Warrantless Search and Seizure

Because Defendant has standing to challenge the search, the Court considers whether IPD's warrantless search and seizure were constitutional. Defendant argues that because his arrest occurred outside of the hotel room, the warrantless search of the room was unconstitutional and "cannot be excused under any enumerated exception." Mot. 16. This argument is unavailing. *See United States v. Charles*, 469 F.3d 402, 405-06 (5th Cir. 2006); *see also Maldonado*, 472 F.3d at 393 ("The protective sweep doctrine may apply even if the arrest occurs outside the home." (citations omitted)), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011). *Charles*, a case neither party cited, is instructive.

In *Charles*, the Fifth Circuit focused on the second variation of the post-arrest exception and held that an officer's cursory sweep of a storage unit was permissible, even without probable cause or reasonable suspicion, because the unit was a space "immediately adjoining the place of arrest from which an attack could be launched." *Charles*, 469 F.3d at 405-06 (emphasis and citation omitted). Here, as in *Charles*, the Court finds that IPD's sweep of the hotel room immediately adjacent to the site of Defendant's arrest was permissible, even without probable cause or reasonable suspicion, as the hotel room was a space "immediately adjoining the place of arrest from which an attack could be launched." *Id.* at 405 (emphasis and citation omitted). And because (1) IPD lawfully entered the area where the firearm was located, (2) the firearm was in plain view, (3) the incriminating nature of the firearm was 'immediately apparent,' and (4) IPD had a lawful right of access to the firearm, the Court finds that IPD's seizure of the firearm falls within the plain view doctrine and therefore was constitutional. *See Rodriguez*, 601 F.3d at 407 (citation omitted).

The Court also finds that IPD's initial search of the hotel room was permissible under the third variation of the post-arrest exception because IPD officers had articulable facts plus rational

8

inferences that that would allow a reasonable officer to suspect that an individual dangerous to the officers was within the area to be searched. *Mata*, 517 F.3d at 285. IPD entered the hotel room legally and for a legitimate law enforcement purpose—that is, "they had reason to believe that there may have been another dangerous individual in the room" because Defendant "may have accessed the room through another individual" or "may be visiting another person at the hotel." Resp. 3, 8-9; *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005) ("[A]gents were authorized to make a protective sweep even though [the defendant] was arrested outside, since they had reasonable grounds to believe there were people inside the house who posed a security risk.").

Further, the protective sweep was supported by a reasonable, articulable suspicion that the area swept harbored an individual posing a danger to those on the scene. *See* Resp. 9-10. As stated previously, IPD officers had reason to believe Defendant may be visiting another person in the hotel room. *Id.* at 9. The officers were "uncertain[] . . . whether [Defendant's] girlfriend . . . was in the room with him and in danger," they had a "reasonable belief that [Defendant] had a fully automatic weapon inside the room," and they had "knowledge that there were hiding places that could not be seen from the door." *Id.* Moreover, Detective Hock testified that IPD arrived *after* Defendant checked into Room 248 and surveilled the room for approximately three hours. Resp., Ex. 10 at 16:1-25. The Court finds that the officers had reason to believe that there could have been another person inside the hotel room.[5] *Id.* at 21:16-22:18. Considering the "totality of the circumstances surrounding the officers' actions," there is sufficient evidence to conclude that the officers' fear was reasonable. *Rodriguez*, 601 F.3d at 406 (quoting *Maldonado*, 472 F.3d at 395). And, as the bodycam footage illustrates, the initial sweep was no more than a cursory inspection

---

[5] The Court does not accept Defendant's conclusory assertion that, prior to surveilling the room, IPD "determined that [Defendant] was alone in the hotel room." Mot. 2; *Harrelson*, 705 F.2d at 737.

of those spaces where a person may be found. *See* Mot., Ex. 3 at 02:45-03:47. Finally, the sweep, which lasted approximately two minutes, was "no longer than [] necessary to dispel the reasonable suspicion of danger, and no longer than the police [were] justified in remaining on the premises." *Rodriguez*, 601 F.3d at 405-06. Accordingly, the Court finds that IPD's initial sweep was constitutional under the post-arrest exception and the seizure of the firearm was permissible pursuant to the plain view doctrine.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress [ECF No. 20] as to the firearm seized from Defendant's hotel room on January 27, 2024. If any additional items seized from the hotel room on January 27, 2024, are still at issue, the Court requires further briefing by the Government, on or before **June 21, 2024**. Defendant may reply on or before **June 28, 2024**.

**SO ORDERED.**

SIGNED June 7, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**